**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BRIAN KENNEDY | : | |
| | : | |
| Appellant | : | No. 998 EDA 2023 |

Appeal from the Judgment of Sentence Entered March 23, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0002966-2019

BEFORE: LAZARUS, P.J., STABILE, J., and LANE, J.

MEMORANDUM BY LANE, J.: **FILED SEPTEMBER 5, 2024**

Brian Kennedy ("Kennedy") appeals from the judgment of sentence imposed following his jury convictions for murder in the first degree and possessing an instrument of crime ("PIC").[1] We affirm.

Kennedy fatally shot his ex-wife, Stephanie Miller ("the decedent"), during a custody exchange of their minor child at a Wawa convenience store in Wayne, Delaware County. Kennedy then fled the scene. Shortly thereafter, police located Kennedy in his vehicle, which also contained an assault rifle and a cell phone. Police arrested Kennedy and charged him with the above offenses.

During the murder investigation, police applied for a warrant to search Kennedy's cell phone. As Kennedy's sole issue on appeal challenges the

---

[1] 18 Pa.C.S.A. §§ 2502(a), 907(a).

sufficiency of the affidavit of probable cause ("Affidavit") supporting the application for the search warrant, we review the Affidavit in detail. The Affidavit was prepared by Radnor Township Police Detective Thomas Schreiber,[2] specially trained in mobile device investigations, and Delaware County District Attorney's Office Detective Michael Jay. The Affidavit first stated that on the night of March 28, 2019, police officers responded to a report of a shooting at the Wawa store in Wayne. The shooter was no longer at the scene. A woman, identified as the decedent, had gunshot wounds to her head and stomach, and she was pronounced deceased. **See** Omnibus Pretrial Motion, 7/30/19, Exhibit B, Affidavit, 3/29/19, at 2-3.

Responding officers obtained a surveillance video, which showed a man "retrieve a rifle from the trunk of a . . . sedan . . . in front of the Wawa" store. **Id**. at 3. The man entered the Wawa with the rifle, exited twenty-six seconds later with the rifle, entered the front seat of the car, and drove away. A second surveillance video, showing the front door area of the Wawa, also showed the man enter the Wawa with the rifle.

The Affidavit further summarized: Tredyffrin Police Corporal Scott Costa, who responded to the scene, recognized the decedent's name from prior

---

[2] Although the suppression hearing notes of testimony indicate the spelling of the detective's last name to be "Shriver," the Affidavit, co-written by the detective, sets forth his name as "Schreiber."

domestic disturbances involving Kennedy.[3] Corporal Costa retrieved an electronic photo of Kennedy and another officer who observed that photo stated that Kennedy was the same person he had just observed in the second surveillance video. *Id*.

Responding officers interviewed four Wawa employees who were in the store during the shooting. Two employees recognized Kennedy as a regular customer, although they did not know his name, and both stated they heard approximately five gunshots. One of these employees described Kennedy as appearing "agitated and [having] a 'stern' look on his face as he looked around the store." *Id*. This employee further stated that Kennedy walked up to the decedent, shot her at point blank range, and did not say anything the entire time he was in the store. *See id*. Both employees, as well as two additional eyewitnesses in the store, identified Kennedy in a photo array as the person who entered the store with a rifle.

The Affidavit stated that two hours after the shooting, officers located Kennedy in his car in a park. Officers took Kennedy into custody and summoned medical assistance, as he was suffering from a drug overdose. Officers also retrieved an assault rifle from the car, which they believed to be the murder weapon, as well as a black Apple iPhone 6.

---

[3] The decedent previously obtained orders against Kennedy pursuant to the Protection from Abuse Act, *see* 23 Pa.C.S.A. §§ 6101-6122.

The decedent's boyfriend told police that on the day of the shooting, Kennedy sent a text message to the decedent, confirming they would meet at the Wawa store that evening. Kennedy further stated in this message, "I don't want to have to deal with law enforcement. If I have to speak to a cop, then I will ask[] through my attorney to have harassment charges against you." Affidavit, 3/29/19, at 4.

The Affidavit also set forth the following findings of the police investigation: five months earlier, Kennedy obtained a permit to carry a concealed weapon; twelve days before the shooting, Kennedy purchased a firearm from a gun store; and on the day before the shooting, he purchased ammunition from the same store.

The application for a search warrant requested a "full search" of "all data" on Kennedy's phone existing from March 16 through March 29, 2019, including:

> Address book/contacts, messaging, call logs, voice mail, photographs, videos, emails, SMS/MMS messages, calendar, and any and all media, instant messaging, memo/note pads, tasks, voice memos, internet browser history[,] any and all applications, both available and deleted[, and] the SIM card [and] the Secure Digital (SD) card, [both of] which may or may not be located inside of the cellular phone.

*Id*. at 1, 9.

The affiants averred the above information would assist investigators in determining: (1) whether there were other communications between Kennedy and the decedent "leading up to the" shooting; (2) whether Kennedy

- 4 -

"communicated with others about his involvement with the [decedent] in the days prior to" the shooting, as "this evidence may provide police with additional witnesses and motive evidence;" and (3) whether Kennedy researched information about the gun and ammunition purchased days before the shooting. *Id*. at 8. Additionally, the affiants wished to search for location ("GPS") data that would "assist investigators in corroborating witnesses." *Id*.

Based on the information in the Affidavit, the magisterial district court issued a warrant to search the contents of Kennedy's phone. Subsequently, Kennedy filed an omnibus pretrial motion seeking suppression of the evidence recovered from his phone.[4] The trial court conducted a suppression hearing at which the co-affiant, Detective Schreiber, testified. Pertinently, Kennedy argued that the Affidavit did not state why the detectives believed the sought-after evidence would appear in the phone, and thus, the Affidavit failed to show a nexus between the crime and the phone. *See* N.T., 11/22/21, at 45-46. The Commonwealth responded that police officers identified Kennedy as the shooter within thirty minutes of the shooting, and the search warrant application clearly stated the police were searching for a motive and "the why and the how this crime happened." *Id*. at 46-47. Accordingly, the Commonwealth contended, the lack of any "particular language" in the Affidavit was not fatal and the trial court should review it "with common

_____

[4] Neither the "Receipt/Inventory" sheet, attached to the last page of the Affidavit, nor the suppression record indicate what evidence was recovered from the phone.

- 5 -

sense." *Id*. at 47. The trial court denied Kennedy's motion to suppress the evidence recovered from his phone.

The matter proceeded to a jury trial, where the eyewitnesses inside the store, responding officers, and investigating detectives testified. Kennedy testified in his own defense, describing that the decedent previously threatened him and falsely accused him of hitting her, but his attempts to obtain a PFA order against her were unsuccessful. Kennedy stated that on the evening of the shooting, he took Xanax "to sedate himself 'before doing anything'" and went to Wawa store to talk to the decedent, but she said, "[y]our time with your son is over for good this time." Trial Court Opinion, 8/25/23, at 23. Kennedy stated he "left in a rage," drove to his apartment, but returned to the Wawa store, became progressively angrier, and "just reacted and . . . got the gun" and shot the decedent. *Id*. at 24.

The jury found Kennedy guilty of murder in the first degree and PIC. On March 30, 2023, the trial court imposed a sentence of life imprisonment without parole and a consecutive term of two and one-half to five years' imprisonment. Kennedy filed a timely notice of appeal and a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.[5]

---

[5] Following the filing of the notice of appeal, the trial court permitted Kennedy's trial counsel, Michael Dugan, Esquire, to withdraw from representation, and appointed present counsel, Wana Saadzoi, Esquire ("Counsel"). The trial court then directed Kennedy to file a Rule 1925(b) statement within twenty-one days, or by Tuesday, May 23, 2023. On the day ***thereafter***, Counsel filed a motion for extension of time to file a Rule 1925(b)

Kennedy raises the following issue for our review:

Did the trial court err by failing to grant [Kennedy's] motion to suppress physical evidence when the search of [Kennedy's] cell phone was overly broad and conducted without probable cause in violation of [Kennedy's] right to be free from unreasonable search and seizure under the Fourth Amendment to the United States Constitution and Article One, Section Eight of the Pennsylvania Constitution.

Kennedy's Brief at 4.

Kennedy avers the search of his phone was overly broad and lacked probable cause, and thus the trial court erred in denying his motion to suppress. Our standard of review with respect to a suppression ruling is limited to determining:

whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those

---

statement, which the trial court purported to grant. Following a second extension of time, Counsel filed a Rule 1925(b) statement.

An appellant, who seeks an extension of time to file a Rule 1925(b) statement, must file such a petition within the time allotted for the Rule 1925(b) statement, or risk waiver of all issues not timely raised. **See Commonwealth v. Gravely**, 970 A.2d 1137, 1145 (Pa. 2009). However, our Supreme Court has also held that an attorney's untimely filing of a Rule 1925(b) statement, which waives all issues on appeal, amounts to *per se* ineffective assistance of counsel, for which an appellant is entitled to prompt relief. **See Commonwealth v. Burton**, 973 A.2d 428, 432-33 (Pa. 2009).

Here, Counsel filed the motion for extension of time **after** the twenty-one-day deadline to file a Rule 1925(b) statement. We could find this untimely filing has resulted in the waiver of all of Kennedy's issues on appeal. **See Gravely**, 970 A.2d at 1145. However, we conclude Counsel's action amounted to *per se* ineffective assistance, for which Kennedy is entitled to relief. **See Burton**, 973 A.2d at 432-33. Thus, we decline to find waiver. Furthermore, as the trial court has prepared a thorough Rule 1925(a) opinion addressing Kennedy's issue, we will consider the merits of his appeal. **See id**. at 433.

facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, "whose duty it is to determine if the suppression court properly applied the law to the facts." Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (citations omitted).

Our scope of review of a suppression court's ruling is confined to the trial court's questions of law. *See Commonwealth v. Smith*, 784 A.2d 182, 185 (Pa. Super. 2001) (citation omitted). We review only the factual record that existed at the time of the suppression hearing. *See Commonwealth v. Davis*, 241 A.3d 1160, 1171 (Pa. Super. 2020) (citation omitted).

The Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures. *See* U.S.Const., amend. IV, § 1; *see also* Pa.Const. Art. I, § 8. To search protected areas, authorities must possess "sufficient probable cause . . . as determined by a neutral magistrate." *Commonwealth v. Ani*, 293 A.3d 704, 715 (Pa. Super. 2023). "[T]he legal determination of whether a warrant was supported by probable cause is limited to the four corners of the affidavit." *Id*. at 709.

"Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." **Davis**, 241 A.3d at 1173 (citation omitted). "[P]robable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts —not readily, or even usefully, reduced to a neat set of legal rules." **Ani**, 293 A.3d at 715 (*citing* **Illinois v. Gates**, 462 U.S. 213, 232 (1983)).

"To establish probable cause, the Commonwealth must demonstrate that a search meets the requirements of the 'totality-of-the-circumstances' test." **Commonwealth v. Barr**, 266 A.3d 25, 40 (Pa. 2021).

> Pursuant to the "totality of the circumstances" test . . . the task of an issuing authority is simply to make a practical, commonsense decision whether, given all of the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. . . .
>
> It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.
>
> * * * *
>
> Further, a reviewing court [is] not to conduct a *de novo* review of the issuing authority's probable cause determination, but [is] simply to determine whether or not there is substantial evidence in the record supporting the decision to issue the warrant.

- 9 -

***Jones***, 988 A.2d at 655 (paragraph break added, citation omitted).

An affiant must establish a nexus between the item to be searched and the suspected crime committed. ***See id***. at 667. Article 1, Section 8 of the Pennsylvania Constitution "requires that a warrant describe the items to be seized "as nearly as may be . . .." ***Ani***, 293 A.3d at 716 (citation omitted); ***see also*** Pa.R.Crim.P. 205(A)(2)-(3) (requiring a search warrant to "identify specifically the property to be seized" and "name or describe with particularity the person or place to be searched"). "The requirement that warrants shall particularly describe the things to be seized makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another." ***Ani***, 293 A.3d at 716 (citation omitted).

"A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." ***Ani***, 293 A.3d at 717 (emphasis added and citation omitted). "[A] valid search warrant authorizes the search of any container found on the premises that might contain the object of the search." ***Id***. (citation omitted). However, this Court has recognized that "[s]earching digital evidence poses unique issues, owing to the distinctions between searching physical versus digital spaces." ***Id***. (emphasis added). "[D]igital evidence can be easily disguised or hidden." ***Id***. at 722. Additionally,

> [c]ell phone users often may not know whether particular information is stored on the device or in the cloud, and it generally

> makes little difference. And the very nature of digital evidence makes it far more difficult to identify in advance which 'containers' in the device might hold the sought items.

*Id*. at 718 (quotation marks omitted). Nevertheless, "in any assessment of the validity of the description contained in a warrant, a court must initially determine for what items probable cause existed. The sufficiency of the description must then be measured against those items for which there was probable cause." *Id*. "[W]here law enforcement seeks to search a person's cell phone based on the person's mere proximity to illegal contraband, some link sufficient to connect the two must be provided in the affidavit of probable cause." *See Commonwealth v. Johnson*, 240 A.3d 575, 587 (Pa. 2020) (plurality).

Relevant to Kennedy's argument on appeal, we consider this Court's decision in *Ani*, 293 A.3d 704. In that case, the police obtained a warrant to search the defendant Ani's cell phone for certain data. *See id*. at 709. Pertinently, the affidavit of probable cause summarized the first victim's report that an unknown man entered her apartment's bedroom. *See id*. at 708. The man "shone a light from his cell phone on her." *Id*. The victim scared the man, who fled. *See id*. Officers obtained an interior surveillance video, which showed a man, later identified as Ani, who lived in the same apartment building, attempting to open several doors in the hallway, then entering the victim's apartment, and subsequently entering two other apartments. *See id*. A second victim reported that, twenty days earlier, she "discovered" Ani

inside her apartment. *Id*. Ani stated he was visiting her roommate and he would text the roommate, and then used his cell phone. *See id*. A third victim told police that she heard someone inside her apartment, and "[a] neighbor confronted [Ani] shortly thereafter and identified [him] in a photo lineup." *Id*.

The police applied for, and received, a warrant to search Ani's phone for data, existing on the dates of the three incidents above, relating to: (1) GPS information; (2) use of the flashlight; and (3) photos and videos, which the Commonwealth "hypothesize[d]" Ani could have taken as "trophies" of his crimes. *Id*. at 709, 728. Ani filed a motion to suppress the evidence, which the trial court granted.

The Commonwealth appealed. This Court reasoned: "If the authorities had probable cause to believe the phone contained [the above evidence], then the authorities could search the whole phone for" the evidence. *Id*. at 723. Under this test, we first concluded the affidavit established probable cause that Ani both possessed the cell phone and used the phone's flashlight function while committing the crimes. *See id*. at 729. "Thus, there was probable cause to obtain records concerning the phone's movement and its flashlight usage." *Id*. However, this Court determined there was no probable cause that the phone would contain photos or videos relating to the crimes. *See id*. at 724-25. We cited the affidavit's speculation — that the "[a]ffiants would like to access [Ani's] phone to determine if there are any videos that may have

- 12 -

recorded the crime" — and rejected the Commonwealth's "hypothesi[s]" that Ani could have saved photos or videos as "trophies" of his crimes. *Id*. at 728, 729. Accordingly, this Court affirmed in part and reversed in part.

Here, Kennedy argues that, like the search for photos and videos in *Ani*, the Affidavit improperly sought evidence as there were no facts to support a belief that the evidence "even existed" on his phone. Kennedy's Brief at 14. Specifically, Kennedy challenges the search for: (1) his communications with the decedent "leading up to the murder;" (2) his communications "with others about his involvement with the [decedent] in the days before" the shooting; (3) his research history for information about the gun or ammunition he purchased; and (4) the GPS information that "could assist investigators in corroborating witnesses." *Id*. To support his claim, Kennedy also cites Detective Schreiber's testimony at the suppression hearing that "he did not have any reason to believe that he would find the requested information [on] his phone." *Id*. Kennedy thus concludes there was no nexus between the crime and the search of his phone, and the search warrant was overly broad.

The trial court stated that it deferred to the findings of the magisterial district court, who "dutifully determined there was a fair probability [that] contraband or evidence of the crime would be found in" Kennedy's phone. Trial Court Opinion, 8/25/23, at 35. The trial court determined the Affidavit properly "described the places to be searched and the items to be seized with specificity and [was] supported by probable cause to believe the items sought

- 13 -

would produce evidence of a crime." *Id*. Furthermore, the trial court considered Detective Schreiber's testimony at the suppression hearing. *See id*. at 35-36.

Based on our review of the suppression record, we conclude the trial court's factual findings are supported by the record and its legal conclusions are free from error. *See Jones*, 988 A.2d at 654. First, we consider Kennedy's claim that Detective Schreiber testified "he did not have any reason to believe that he would find the requested information [on] the phone." Kennedy's Brief at 14. Our review of the suppression hearing transcript reveals the detective did not testify to having such a belief. Instead, Kennedy cross-examined Detective Schreiber on whether the Affidavit included language "that based on [his] training and experience," [he] believe[d he would] find" the sought-after evidence. N.T., 11/22/21, at 32-33. Detective Schreiber acknowledged that "[t]hat exact language is not in there." *Id*. Detective Schreiber thus merely conceded that certain language was not included in the Affidavit.

In any event, at the hearing, Kennedy argued the Affidavit failed to both: (1) show a nexus between the crime and the sought-after evidence; and (2) explain why the detective believed he would find certain evidence on his cell phone. *See id*. at 45-46. The Commonwealth responded that "just because there wasn't particular language used, [it was not] fatal . . . to the establish[ment] of probable cause in this matter. The police knew [who and]

what they were looking for . . . and they articulated [it] plainly" in the Affidavit. *Id*. at 47. The trial court weighed these arguments and found the Affidavit properly described with specificity the places to be search and the items to be seized, and set forth sufficient probable cause to believe the data sought would produce evidence of a crime. *See* Trial Court Opinion, 8/25/23, at 35.

Second, we review Kennedy's claim that the trial court abused its discretion in denying relief with respect to the search for communications between him and the decedent. As stated above, the affiants sought Kennedy's communications with the decedent over thirteen days: from March 16, 2019, when Kennedy purchased the firearm, through March 29, 2019, the day after the shooting. The Affidavit stated the decedent had prior domestic disturbances with Kennedy. *See* Affidavit, 3/29/19, at 2. Additionally, officers learned that on the day of the shooting, the decedent received a text message from Kennedy, confirming their meeting time that night at the Wawa store. Kennedy's message also referred to police involvement: "I don't want to have to deal with law enforcement. If I have to speak to a cop, then I will ask[] through my attorney to have harassment charges against you." *Id*. at 4. Finally, the Affidavit specified that communications between Kennedy and the decedent would provide evidence of motive. Based on all the foregoing, we conclude the trial court did not abuse its discretion in upholding the magisterial district court's ruling, and finding the Affidavit established probable cause for the police to believe Kennedy's phone contained evidence of his

communications with the decedent, that were connected to her fatal shooting. *See Ani*, 293 A.3d at 723.

Third, we consider Kennedy's arguments respecting the search for communications between him and others and relating to the decedent. Given the text communication Kennedy sent to the decedent on the day of the shooting, it was reasonable for the affiants to believe Kennedy's phone contained other communications that would provide evidence about the decedent or this crime, including motive evidence. We reiterate the Affidavit limited the search to the twelve days leading to the shooting, and to those communications that concerned the decedent or this crime. In light of all the foregoing, we conclude the trial court did not abuse its discretion in upholding the magisterial district court's ruling, and finding the Affidavit established probable cause for the police to believe Kennedy's phone contained evidence of his communications with others about the decedent or the crime. *See Ani*, 293 A.3d at 723.

Next, we consider whether the trial court abused its discretion in denying relief on Kennedy's challenge to the search for evidence that he researched information about the gun and ammunition he purchased. As stated above, the Affidavit stated that Kennedy obtained a permit to carry a concealed weapon five months before the shooting, and purchased a firearm twelve days before the shooting, and ammunition two days before the shooting. Under the totality of the circumstances, including the short amount of time between

Kennedy's purchase of the gun and ammunition and the shooting, we conclude the trial court did not abuse its discretion in finding the Affidavit established probable cause for the police to believe Kennedy's phone contained evidence of research about the gun and ammunition he purchased in the days before the shooting. *See Ani*, 293 A.3d at 723.

Finally, we consider Kennedy's challenge concerning the search for GPS information on his phone. As stated above, when officers arrested Kennedy on the night of the shooting, his phone was in the car with him. Based on the foregoing, the affiants had probable cause to believe Kennedy had his phone at the time of the shooting, either on his person or in his car, which was parked in front of the Wawa store. Thus, we conclude the trial court did not abuse its discretion in finding the affidavit established probable cause for the police to believe Kennedy's phone contained evidence of GPS data relevant to the crime. *See Ani*, 293 A.3d at 723, 729.

Furthermore, even if we were to conclude the trial court should have suppressed any of the above evidence, Kennedy has not shown he was prejudiced. *See* Commonwealth's Brief at 16-17 (arguing that "[a]ny imagined error in denying the suppression motion was harmless"). This Court has explained:

> Once a reviewing court has decided admitted evidence should have been suppressed, it must determine beyond a reasonable doubt whether the error was harmless. Where the error is harmless, a new trial is not warranted. Our Supreme Court has explained that "[h]armless error exists if the reviewing court is convinced from the record that[, *inter alia*,] the erroneously

admitted evidence was merely cumulative of other untainted evidence . . ..”

***Commonwealth v. Rosendary***, 313 A.3d 236, 249 n.13 (Pa. Super. 2024) (citation omitted).

On appeal, Kennedy has not explained what, if any, evidence was in fact seized from his cell phone, nor what evidence was presented at trial. Importantly, Kennedy has also not explained how the seized evidence prejudiced him. Even if the above evidence were not introduced at trial, the trial court has thoroughly summarized the extensive evidence presented at trial, and opined it was sufficient to support his guilty verdicts. ***See*** Trial Court Opinion, 8/25/23, at 5-26. Pertinently, the decedent's mother testified the decedent went to the Wawa store on the night of the shooting because it was the court-appointed custody exchange location for the decedent's and Kennedy's son. ***See id***. at 5. Three Wawa employees testified that they observed Kennedy, who they described as a regular customer, enter or walk around the store with a rifle. ***See id***. at 5-7. Two of these employees observed Kennedy shoot the Victim. ***See id***. at 6, 8. Additionally, a customer testified he was in his vehicle outside the Wawa store but observed Kennedy shoot the victim, and another customer testified he observed Kennedy carry a rifle in the store. ***See id***. at 9. Surveillance videos showed Kennedy retrieve a rifle from his car, carry it into the Wawa store, and leave the store. ***See id***. at 12-13. Finally, Kennedy himself admitted at trial that he retrieved a rifle from the trunk of his car, "ran into the Wawa" store, "went straight for" the

Victim, and "repeatedly pulled the trigger" nine to twelve times, shooting her four times. *Id*. at 26. Accordingly, even if we were to conclude that the trial court abused its discretion in denying Kennedy's suppression motion, the erroneously admitted evidence would have been merely cumulative of other untainted evidence. *See Rosendary*, 313 A.3d at 236 n.13.

For the foregoing reasons, we conclude the suppression record supports the trial court's findings and conclusions of law. Thus, we do not disturb the suppression ruling nor the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/05/2024